**IT IS ORDERED as set forth below:**


**Date: April 13, 2018**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | : | CASE NUMBERS |
| | : | |
| LESLIE D. HUGHES, | : | BANKRUPTCY CASE |
| | : | 17-52260-LRC |
| Debtor. | : | |
| _____ | : | |
| | : | |
| LESLIE D. HUGHES, | : | ADVERSARY PROCEEDING |
| | : | NO. 17-5169-LRC |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| J.P. MORGAN CHASE AND | : | |
| RELATED SUBSIDIARIES, SETERUS, | : | |
| INC., FEDERAL NATIONAL | : | |
| MORTGAGE ASSOCIATION, | : | |
| BROCK & SCOTT, PLLC (LLC), and, | : | |
| FIRST AMERICAN TITLE, | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 13 OF THE |
| Defendants. | : | BANKRUPTCY CODE |

## ORDER

Before the Court are several motions to dismiss (the "Motions") filed by Brock & Scott

("B&S") (Doc. 16), First American Title Insurance Company ("First American Title") (Doc. 17),

1

Federal National Mortgage Association ("Fannie Mae") and Seterus, Inc. ("Seterus") (Doc. 24), and JPMorgan Chase Bank, N.A. ("JPMC")[1] (Doc. 26) (collectively, the "Motions").   The Motions seek dismissal of a sixteen-count complaint (the "Complaint") filed by Leslie D. Hughes ("Plaintiff") against the Defendants.   The allegations in the Complaint center around real property located at 2270 Charleston Place, Lithia Springs, GA (the "Property").

The Motions generally state that the Complaint is a "shotgun pleading" that fails to state a claim for relief and must, therefore, be dismissed under Rule 12(b)(6).[2]   Debtor opposes the Motions, and the Parties have extensively briefed the issues.[3]

## I.   <u>Standard for Motion to Dismiss</u>

Under Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Rules"), the Court may dismiss a complaint if it fails "to state a claim upon which relief can be granted."   *See* Fed. R. Bankr. P. 7012 (incorporating Fed. R. Civ. P. 12(b)(6)).   "Rule 8(a)(2) of the Federal Rules of Civil Procedure [the "Federal Rules"] requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'   The complaint need only provide enough information to give a defendant fair notice of the plaintiff's claim and the

---

[1] B&S, First American Title, Fannie Mae, Seterus and JPMC are collectively referred to as "Defendants."

[2] Defendants argue that the Complaint must be dismissed simply because it is a "shotgun pleading." *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).   The Eleventh Circuit Court of Appeals "has cautioned [lower courts] against simply dismissing shotgun complaints by *pro se* plaintiffs in the absence of an order to replead." *Green v. Bank of Am. Corp.*, 2013 U.S. Dist. LEXIS 196950, at *16 (N.D. Ga. Aug. 6, 2013).   Although the Court agrees that the Complaint is a shotgun pleading, the Court will not dismiss it for that reason alone without having previously allowed Plaintiff an opportunity to amend the Complaint.

[3] Seterus and Fannie Mae request that the Court dismiss the claims based on federal law and then abstain from hearing the state law claims.  *See Tisdale v. Westmoore Grp., LLC*, 2014 U.S. Dist. LEXIS 189203, at *34 (N.D. Ga. Aug. 27, 2014) ("The Eleventh Circuit 'encourage[s] district courts to dismiss any remaining state claims' when the federal claims are dismissed prior to trial.").   The Court will not address the abstention request at this time, as the Court does not herein dismiss all of Plaintiff's federal claims with prejudice, but does dismiss the bulk of Plaintiff's state law claims for failure to state a claim.

grounds the claim is based on." *Broner v. Wash. Mut. Bank, Fa*, 258 F. App'x 254, 256 (11th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)).[4]

When considering dismissal of a complaint due to the plaintiff's failure to state a claim upon which relief can be granted, the Court must accept as true all factual allegations set forth in the complaint and, on the basis of those facts, determine whether the plaintiff is entitled to the relief requested.  The Court must also draw all reasonable inferences in the light most favorable to the non-moving party.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007); *Daewoo Motor America, Inc. v. General Motors Corp*., 459 F.3d 1249, 1271 (11th Cir. 2007); *Hill v. White* 321 F.3d 1334, 1335 (11th Cir. 2003); *Grossman v. Nationsbank, Nat'l Ass'n*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  Legal conclusions, labels, and unsupportable assertions, however, are not entitled to a presumption of truth and "must be supported by [specific] factual allegations."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc*., 326 F.3d 1183, 1185 (11th Cir. 2003).

Moreover, in *Twombly*, the Supreme Court held that the Court must dismiss a case where the well pled facts do not state a claim that is plausible on its face.  *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 554-56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," or when the plaintiff can establish the necessary elements of the cause of action.  *Id*.; *see also In re Clower*, 463 B.R. 573, 576 (Bankr. N.D. Ga. 2011) (Drake, J.).  The factual allegations in the complaint need not be fully developed, but they must include sufficient factual information to provide the grounds on which the claim rests, and they "must be

---

[4] Rule 7008 incorporates Federal Rule 8 in adversary proceedings.  Fed. R. Bankr. P. 7008.

enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. Nonetheless, the Court need not accept as true "formulaic" or "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Twombly*, 550 U.S. at 545; *Iqbal*, 556 U.S. at 663-64.

Additionally, when alleging fraud, a plaintiff must comply with Federal Rule 9(b).[5] *Perkins v. Crown Financial LLC (In re International Management Assocs. LLC)*, 2007 WL 7141787, at *2 (Bankr. N.D. Ga. Mar. 6, 2007) (Bonapfel, J.). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b); thereby "alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Kipperman v. Onex Corp.*, 2007 WL 2872463, at *6 (N.D. Ga. Sept. 26, 2007) (quoting *Durham v. Bus. Management Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1998)). Rule 9(b) further provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Although *pro se* pleadings are governed by less stringent standards than pleadings prepared by attorneys, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), *pro se* parties are still required to comply with minimum pleading standards set forth in the Federal Rules of Civil Procedure and this district's Bankruptcy Local Rules, *Grew v. Hopper*, 2008 WL 114915, at *2 (M.D. Fla. Jan. 9, 2008); *see also Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (unpublished) ("Although we construe them liberally, *pro se* complaints also must comply with the procedural rules that govern pleadings."). The Court does not have a "license to serve as *de*

---

[5] Rule 7009 makes Federal Rule 9 applicable in adversary proceedings.

*facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *Smith v. Ocwen Fin.*, 488 F. App'x 426, 427 (11th Cir. 2012) (unpublished) (internal marks and citations omitted).

### Consideration of Materials Extraneous to the Complaint and the Motions

Plaintiff attached to the Complaint 209 pages of exhibits.  Included in these exhibits are communications (or at least partial communications) between Plaintiff and Defendants, loan statements, certain real property records related to the Property and other unrelated properties, Consumer Financial Protection Bureau ("CFPB") complaints against Defendants, pleadings from other cases unrelated to the Property or Plaintiff, and foreclosure notices related to the Property (Doc. 1, Exhibits 1-20).

Seterus attached to its motion to dismiss a copy of the recorded security deed related to the Property (Doc. 24, Exhibit 1) (the "Security Deed").  JPMC attached to its motion to dismiss a copy of the Security Deed and a copy of an UCC cancellation statement related to the Property (Doc. 26, Exhibits A-B).  Debtor objects to the Court's considering the exhibits JPMC and Seterus attached to their motions to dismiss because they are "void" and not included with the Complaint (Doc. 29, Pg. 3 Lns 7-9; Doc. 34 Pg. 5, Lns 2-3).

"Generally, the Court must convert a motion to dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56 if it considers materials outside of a complaint."[6]  *Green v. Bank of Am. Corp.*, 2013 U.S. Dist. LEXIS 196950, at *6 (citing Fed. R. Civ. P. 12(d); *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005)) *adopted by* 2013 U.S. Dist. LEXIS 196943 (N.D. Ga., Sept. 6, 2013).  However, if the attached documents are undisputed and central to Plaintiff's claim, the Court may consider it.  *Green*, 2013 U.S. Dist. LEXIS 196950, at *6; *Day*, 400 F.3d at 1276; *see also Clark v. Bibb Cty. Bd. of Educ.*, 174 F. Supp. 2d 1369, 1370 (M.D.

---

[6] Rule 7056 makes Federal Rule 56 applicable in adversary proceedings.  Fed. R. Bankr. P. 7056.

Ga. 2001) ("Additionally, any documents referenced in the complaint that are central to the plaintiff's case may be considered.")   "A document is 'undisputed' when its authenticity is unchallenged." *Green*, 2013 U.S. Dist. LEXIS 196950, at *8.

The Court "may also consider any . . . matters of public record, orders, and items appearing in the record." *Clark,* 174 F. Supp. 2d at 1370.  "The court may take judicial notice of public records not attached to the Complaint, including in this case the Security Deed, when considering a motion to dismiss." *Ricketts v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 87175, at *2 n.1 (N.D. Ga. June 21, 2013).

Plaintiff's objection to the documents Seterus and JPMC attached to their Motions is not based on authenticity.  Furthermore, these documents are central to Plaintiff's claim and are matters of public record.  Most importantly, Plaintiff refers to the Security Deed in the Complaint.  It is therefore appropriate for the Court to consider these documents when analyzing the Motions.

Defendants encouraged the Court to consider the exhibits attached to the Complaint because some of them contradict the Complaint.  The Court has considered only the relevant exhibits that were central to Plaintiff's claims and has notated throughout this opinion when it has relied upon an exhibit.

## II.  Facts[7]

Applying the standards of *Twombly* and *Iqbal*, *supra*, the Court has examined the Complaint and the exhibits attached to it and determined the well pled facts.  Accepting all of Plaintiff's well pled factual allegations as true, and construing all reasonable inference in her favor, the facts are as follows:

---

[7] These facts are taken from the Complaint and the exhibits attached to the parties' pleadings and do not constitute findings of fact by this Court.

- On or about July 5, 2006, Plaintiff entered into two "Federally-related mortgage loans" with Washington Mutual Bank ("WAMU") – Loan numbers XXXXXX8896 ("Loan 8896") and XXXXXX5575 (the "Loan", and collectively with Loan 8896, the "Transactions").[8]

- The Transactions were secured by an interest in Plaintiff's principal dwelling.[9]  The proceeds from the Transactions were used to purchase the Property.[10]

- WAMU qualified Plaintiff for a 6.5% fixed interest rate on a thirty-year loan, but she asked WAMU if she could buy down the rate to 5.5%.[11]  Plaintiff was told by "WAMU Dionne Gajadhar, yes, she could buy down the rate to 5.5%. . . .  Had Plaintiff been told that the 5.5% interest rate was not available, Plaintiff would have continued to shop for a better rate or waited to purchase."[12]

- At closing, "[Plaintiff] did not receive accurate material disclosures nor did Plaintiff receive Notice of Right to cancel for the HELOC identified by loan # [XXXXXX]8896."[13]

- The closing also was moved to a different attorney's office at the last minute and lasted less than ten minutes, and not all documents were prepared and ready to be signed.[14]  When Plaintiff received part of the closing documents weeks later, the terms of the Loan were not as promised and no paperwork was received for Loan 8896.[15]

- The first payment due under the Transactions was more than what the WAMU loan officer had previously quoted, and then in October 2006, Plaintiff received a letter stating yet another increase in the monthly installment by nearly $500 per month due to an alleged increase in taxes and/or property insurance.[16]

- WAMU "was sent and confirmation of receipt of a written request to cancel the contracts related to the 2 loan numbers . . . on November 1, 2006."[17]  WAMU did nothing in response to the notification of rescission of the Transactions to either object or agree.[18]

- Plaintiff continued to pay the monthly payment and did so because she anticipated that the Transactions would be unwound and was worried she would be found to be in default and would lose everything in a nonjudicial foreclosure.[19]  Plaintiff continued to pay "through six surgeries and multiple periods of treatments."[20]

---

[8] Complaint at ¶ 16.
[9] *Id.*
[10] *Id.* at ¶ 21.
[11] *Id.*
[12] *Id.*
[13] *Id.* at ¶ 16.
[14] *Id.* at ¶ 22.
[15] *Id.* at ¶ 24.
[16] *Id.* at ¶ 23.
[17] *Id.* at ¶ 16; Exhibit 1.
[18] *Id.* at ¶¶ 16-18.
[19] *Id.* at ¶ 27.
[20] *Id.* at ¶ 29.

- Plaintiff tried to secure an attorney to assist her in unwinding the Transactions, but was unsuccessful.[21]  Plaintiff has never refinanced or modified the Loan.[22]

- When WAMU failed, Plaintiff contacted the FDIC who told her to contact JPMC regarding the Transactions.[23]  JPMC, like WAMU, did not respond to her notice to cancel the contracts.[24]  Plaintiff provided JPMC the letters she sent to WAMU numerous times, but JPMC did nothing except "strategic moves to liquidate the bad loans through misapplied payments, payments sitting in suspense accounts for no reason, and repeated attempts to force a default, all while JPMC identified itself as the new owner of the loan purchase from the FDIC."[25]

- Plaintiff delivered the written notice to cancel into the hands of JPMC representative Donald Morgan, who said he understood what went wrong and that JPMC would redo the Loan to put the terms as they should have been.[26]  Mr. Morgan advised her to stop making her payments.[27]  JPMC then began foreclosure proceedings against the Property (scheduled for October 4, 2011), which Plaintiff discovered by "Googling" the Property address, rather than from a notice of foreclosure.[28]  Plaintiff received $500 from JPMC because of the Independent Foreclosure Review, but she spent $7,000 trying to keep her home.[29]

- Plaintiff learned in 2011 that Fannie Mae was the owner of the loan.[30]  "Fannie Mae sent confirmation that [it had owned the loan since] September 1, 2006 and [that it] was securitized."[31]  No representative at Fannie Mae would do anything about her rescission request.[32]  Fannie Mae's representatives would not disclose whether the notice to cancel was forwarded to Fannie Mae by WAMU or what Plaintiff should do to cancel the Loan.[33]

- On June 14, 2016, JPMC recorded a deed indicating that it acquired the Security Deed as an asset of WAMU through its purchase of certain assets that occurred by operation of law on September 25, 2008, and an assignment of the Security Deed to Fannie Mae.[34]  JPMC acknowledged in a letter dated January 25, 2017 that it did not acquire the Transactions in 2008.[35]

---

[21] *Id.*
[22] *Id* at Exhibit 17.
[23] *Id.* at ¶ 30.
[24] *Id.*
[25] *Id.* at ¶ 31.
[26] *Id.* at ¶ 32.
[27] *Id.* at ¶ 33.
[28] *Id.* at ¶ 34.
[29] *Id.* at ¶¶ 35, 36.
[30] *Id.* at ¶ 38.
[31] *Id.* at ¶ 39.
[32] *Id.*
[33] *Id.*
[34] *Id.* at Exhibits 3 & 4.
[35] *Id.* at ¶ 41.

- Sometime in 2015 Debtor received a letter from JPMC that showed a zero balance for the Loan.[36]  After receipt of this letter, Plaintiff received a letter from Seterus stating it was servicing a loan for Fannie Mae.[37]  "Plaintiff contacted Fannie Mae regarding the creation of [this] new loan that Seterus was servicing for Fannie Mae [because] the loan number did not correspond with either the Fannie Mae loan number of [XXXXXX]0017 nor [sic] the original loan number # [XXXXXX]5575 [for the Loan] on any official documents filed pertaining to Plaintiffs [sic] property."[38]

- Plaintiff sent Fannie Mae a letter regarding the Loan on December 14, 2016, and did not receive a response.[39]  After months, Plaintiff's call was elevated to Royce, a supervisor at the Fannie Mae Resource Center, who called Plaintiff and explained that Fannie Mae no longer owned the note and the note was no longer in a pool of loans, but could not disclose who presently owned the note.[40]

- "Plaintiff informed Fannie Mae that she received two letters denying her request for a loan modification from Seterus for loan number [XXXX]5273 and that she has no loan with Seterus and Fannie Mae did not respond."[41]  Plaintiff requested proof from Seterus of her requests for a loan modification, but Seterus never provided any proof.[42]

- Plaintiff sent alleged "certified [Qualified Written Requests ("QWR")] indicating NOE and RFI dated December 16, 2015, December 27, 2015, and January 11, 2016, requesting the origins of the fictitious loans," but received no response.[43]  Seterus finally "sent Plaintiff a copy of the voided deed with loan number [XXXXXX]5575 and hand wrote the fictitious number on it."[44]  "Plaintiff also sent the QWRs to [B&S] with no explanation for the creation of the new loan."[45]

- Myah Duboise from Congressman David Scott's office contacted Seterus and initiated a conference call between Plaintiff and Seterus representative Eric.[46]  Plaintiff agreed to pay what Seterus asked, but only under protest and to avoid a nonjudicial foreclosure.[47]  On the

---

[36] *Id.* at ¶¶ 58, 74, 117; Exhibit 17.  While not included in the Complaint, it appears from information included in Plaintiff's responses to JPMC's motion to dismiss, this letter or another sent around the same time explained that JPMC would no longer service the Loan and that Seterus would be the new servicer, and further explained that the loan number for the Loan would change with the new servicer.  (Doc. 34 at ¶ 8.).

[37] Complaint at ¶ 57.

[38] *Id.*

[39] *Id.* at ¶ 59.

[40] This is contradicted by (1) a letter that JPMC sent Plaintiff on March 21, 2017 that states that Fannie Mae is the investor in the loan, Complaint at Exhibit 11; (2) the notice of foreclosure B&S sent plaintiff on December 15, 2016, that states the proceedings are brought "on behalf of Federal National Mortgage [Association]," Complaint at Exhibit 19B; and (3) by Claim 3-1 filed in the Bankruptcy Case that states that Fannie Mae is the creditor and that Seterus is the servicer.

[41] Complaint at ¶ 52; Exhibits 13A-C.

[42] *Id.* at ¶ 71.

[43] Complaint at ¶ 66.

[44] *Id.*

[45] *Id.*

[46] *Id.* at ¶ 73.

[47] *Id.*

call Plaintiff also stated that she would use only the loan number that was on file at the register of deeds, loan number [XXXXXX]5575.[48]  Eric stated that Seterus would not accept a payment submitted with loan number [XXXXXX]5575.[49]

- On or about August 12, 2016, Plaintiff received a debt collection notice from B&S dated August 5, 2016, stating that it had been asked to initiate foreclosure proceedings.[50]  Plaintiff responded by certified mail and fax disputing the account on August 16, 2016.[51]  B&S mailed the foreclosure notice on August 19, 2016.[52]  When Plaintiff called the law firm, an attorney told Plaintiff that her dispute was eleven days late and, therefore, not entitled to reply or verification.[53]  Plaintiff has "confirmation of successful fax transmission that shows [her] response was timely."[54]

- Plaintiff provided B&S with the same information and documents that Seterus and JPMC have received regarding the validity of the Loan and the loan number.[55]  B&S has never responded to Plaintiff's request for "documentation of the origination of loan #[XXXX]5273."[56]

- Plaintiff visited B&S' office, and B&S attorneys told Plaintiff that they would not verify the debt and she needed to get an attorney to stop the foreclosure.[57]  B&S listed the Property for foreclosure twice without verification of the debt and knowing that the account number was fictitious and fraudulent.[58]

- Plaintiff has requested copies of her title insurance package from First American Title and has never received the requested documents.[59]  "Plaintiff received responses to [her] request[s] that 'First American does not have Closing Documents', [sic] 'your request has been forwarded to the closing department and you should have your response in 30 days'. [sic]"[60]  A First American Title representative also told Plaintiff she would have to sue First American Title to get a copy of the closing file.[61]

---

[48] *Id.*
[49] *Id.*  There is also a dispute between Plaintiff, Seterus, and JPMC regarding a $28.00 miscellaneous balance fee that JPMC assessed Plaintiff prior to Seterus becoming the loan servicer.  JPMC will not accept payment on the fee, as it is no longer the servicer for the Loan.  Plaintiff attempted to send the money to Seterus, but Seterus refused to accept any payment noted for loan number 5575.  Complaint at ¶¶ 65, 77-79.
[50] Complaint at ¶ 80.
[51] *Id.* at ¶ 81.
[52] *Id.* at ¶ 82.
[53] *Id.* at ¶ 83.
[54] *Id.* at ¶ 84.
[55] *Id.* at ¶ 85.
[56] *Id.*
[57] *Id.* at ¶ 86.
[58] *Id.* at ¶ 87.
[59] *Id.* at ¶¶ 93, 95.
[60] *Id.* at ¶ 95; Exhibit 14.
[61] *Id.* at ¶ 94.

- "The foregoing acts and omissions of the Defendants were undertaken willfully, persistently, intentionally, knowingly, and in gross and reckless disregard of the rights of the Plaintiff."[62] Further, Defendants' actions "led to an onslaught of uninvited spectators, investors, of all kinds on Plaintiffs' property."[63]  Plaintiff had to keep her eleven-year old daughter from the "constant parade of investors and onlookers taking pictures of her home, attaching flyers to her doors, leaving flyers taped to her mailbox and in her driveway and even approaching her daughter in her own yard."[64]  Because of all of these onlookers, Plaintiff and her daughter had to stay inside with the windows and blinds closed.[65]  Plaintiff has been kept out of work for periods of time due to "panic attacks, elevated blood pressure and having to deal with the temporary paralysis on her left side.  The prolonged nature of Defendants [sic] actions and the related stress has led to Plaintiff having heart problems and out on medical leave without pay again."[66]  Plaintiff's daughter has been stressed by these events and has struggled with sleeping and eating.[67]  Plaintiff and her daughter have been referred for counseling.[68]

### III. Conclusions of Law

### a. Count 16 – Declaratory Relief

Count 16 presents the central question in this adversary proceeding: Did Plaintiff rescind the Transactions in November 2006?  Plaintiff argues that because the Transactions themselves and WAMU's conduct in connection with the Transactions violated RESPA,[69] TILA,[70] and GAFLA,[71] she exercised her right to rescind under TILA Section 1635(a) on November 1, 2006.[72]  Plaintiff asserts that, because she rescinded the Transactions, the deed to secure debt on the Property was extinguished.  Plaintiff argues that because of this, no party has or could have received after that date a valid security interest in the Property.  Plaintiff also makes it clear in her objections to the Motions that she is not seeking to rescind the Transactions through this adversary proceeding, but rather, is seeking enforcement of her rescission.

---

[62] *Id.* at ¶ 120.
[63] *Id.* at ¶ 88.
[64] *Id.* at ¶ 133.
[65] *Id.*
[66] *Id.* at ¶ 141.
[67] *Id.* at ¶ 143.
[68] *Id.* at ¶¶ 140, 144.
[69] The Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA").
[70] The Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA").
[71] The Georgia Fair Lending Act, O.C.G.A. §§ 7-6A-1 *et seq.* ("GAFLA").
[72] Complaint at ¶ 26.

Based on the facts as alleged and the arguments contained in the briefs, there are two potential avenues through which Plaintiff argues that she has the right to rescind the Transactions: (1) under TILA or (2) under applicable Georgia law.[73]

### i.  Rescission under TILA

"[A] residential mortgage transaction as defined [by TILA]" is specifically exempted from TILA's rescission provision. *Cooper v. Countrywide Home Loans Bank of Am.*, 2016 U.S. Dist. LEXIS 130363, at *8-9 (N.D. Ga. July 15, 2016), *adopted by* 2016 U.S. Dist. LEXIS 130362 (N.D. Ga., Aug. 25, 2016); *Morton v. Suntrust Mortg., Inc.*, 2010 U.S. Dist. LEXIS 128839, at *20 (N.D. Ga. Nov. 5, 2010), *adopted by* 2010 U.S. Dist. LEXIS 128840 (N.D. Ga. Dec. 3, 2010); 15 U.S.C. §§ 1635(a), (e).  "[R]esidential mortgage transaction" means "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling *to finance the acquisition or initial construction* of such dwelling." 15 U.S.C. § 1602(x) (emphasis added).

According to the Complaint, the proceeds from the Transactions were used to purchase the Property, and Plaintiff neither refinanced nor modified the Transactions.[74]  The Transactions are, therefore, purchase money mortgages and are not subject to rescission under TILA.  *Cooper*, 2016 U.S. Dist. LEXIS 130363, at *8-9; *Morton*, 2010 U.S. Dist. LEXIS 128839, at *20.[75]

---

[73] While no Defendant briefed rescission under state law, the Court does not believe that Defendants are prejudiced by the Court's considering this argument, as ultimately the Court determines that Plaintiff could not have rescinded her loan under TILA or GAFLA and did not effectuate a rescission under other Georgia law.
[74] Complaint at Exhibit 17.
[75] Plaintiff's reliance on cases, such as *Jesinoski v. Countrywide Home Loans, Inc*., 135 S. Ct. 790 (2015) and *Paatalo v. J.P. Morgan Chase Bank*, 146 F. Supp.3d 1239 (D. Or. 2015), must fail, as these cases did not involve a "residential mortgage transaction."

Plaintiff argues that the Loan is still subject to rescission under TILA because of Regulation Z § 226.23 and the official staff interpretations of Regulation Z.[76]   Plaintiff specifically points to 12 C.F.R. Appendix Supplement I Part 226, Official Staff Interpretations and the special rule for principal dwellings that "[n]otwithstanding the general rule that consumers may have only one principal dwelling, when the consumer is acquiring or constructing a new principal dwelling any loan subject to Regulation Z and secured by the equity in the consumer's current principal dwelling (for example, a bridge loan) is subject to the right of rescission regardless of the purpose of that loan."[77] This exception to the general rule does not apply to Plaintiff's situation.   Plaintiff does not allege that she granted a security interest in the Property to acquire or build a separate primary residence.   In fact, the security interest Plaintiff granted was in the primary residence she was acquiring.   Consequently, the right to rescind under TILA does not apply to the Transactions, and Plaintiff did not rescind the Transactions under TILA.  12 C.F.R. § 226.23(f)(1); *see also*, 15 U.S.C. §§ 1635(e)(1) and 1602(x).[78]

## ii.  Rescission under GAFLA

Plaintiff argues that she has rescinded the Transactions under GAFLA.  The Office of the Comptroller of the Currency (the "OCC")[79] has found that GAFLA as a whole is preempted as to national banks and their operating subsidiaries.  *Salvador v. Bank of Am., N.A. (In re Salvador)*,

---

[76] Regulation Z refers to 12 C.F.R. §§ 226 *et seq.*, which was "issued by the Board of Governors of the Federal Reserve System to implement the federal Truth in Lending Act".  12 C.F.R. § 226.1.

[77] Available at: https://www.law.cornell.edu/cfr/text/12/appendix-Supplement_I_to_part_226.

[78] Plaintiff cites to *Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F. Supp. 1295, 1306-7 (D. Del. 1990) and *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1168 (9th Cir. 2003), for the proposition that, if a right to rescind exists under TILA, the borrower may not be required to tender the proceeds received under the transaction.  These cases are not relevant, however, to the question of whether Plaintiff had a right to rescind the Transactions under TILA and, as noted above, the Court has concluded that she did not.

[79] "The OCC charters, regulates, and supervises all national banks and federal savings associations as well as federal branches and agencies of foreign banks."   https://www.occ.treas.gov/about/what-we-do/mission/index-about.html The mission of the OCC is "[t]o ensure that national banks and federal savings associations operate in a safe and sound manner, provide fair access to financial services, treat customers fairly, and comply with applicable laws and regulations."  *Id.*

456 B.R. 610, 617 (Bankr. M.D. Ga. 2011).[80]   Congress has expressly given the OCC the ability

to "issue and publish in the Federal Register an opinion letter or interpretive rule that concludes

that federal law preempts the application to a national bank any state statute regarding, in part,

consumer protection or fair lending."   *Id.* at 615-16 (citing to 12 U.S.C. §§ 43(a),(b),

1813(q)(1)).  The Georgia Department of Banking Finance acknowledges that GAFLA has been

preempted by federal law, and has declared that GAFLA is preempted for all state charted banks

and their subsidiaries because of GAFLA's comity provision.   Declaratory Ruling "Preemption

of GAFLA by OCC- Effect on State Banks," Published August 5, 2003, available at:

https://dbf.georgia.gov/rulings-and-ag-opinions-1.   As federal law has preempted application of

GAFLA to the Transactions, Plaintiff did not rescind the Transactions under GAFLA.

### iii.   **Rescission under Other Georgia Law**

Plaintiff alleges that she was fraudulently induced into entering the Transactions and that

upon discovery of the fraud she rescinded the Transactions in 2006 under Georgia law.  "The tort

of . . . fraudulent inducement has five elements: a false representation by a defendant, scienter,

intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and

damage to plaintiff."   *Stafford v. Gareleck*, 330 Ga. App. 757, 762, (2015) (citations and

punctuation omitted.).   Based on the facts as alleged in the complaint, including the general

allegations of knowledge and intent,[81] and drawing all inferences in Plaintiff's favor, all of these

elements are satisfied.  Plaintiff asked to buy down her interest rate to 5.5%, and WAMU or its

---

[80] WAMU was chartered under the Office of Thrift Supervision, which merged with the OCC on July 21, 2011. https://www.occ.treas.gov/about/who-we-are/occ-for-you/bankers/ots-integration.html  Prior to this merger, the OTS had similarly determined that federal law preempted GAFLA.  12 C.F.R. § 560.2; *Frykberg v. JPMorgan Chase Bank (Frykberg)*, 490 B.R. 652, 657-60 (B.A.P. 1st Cir. 2013) ("The OTS has issued interpretive letters concluding that the anti-predatory lending laws of . . . Georgia are preempted by the federal scheme[.]") (citations omitted).

[81] Rule 9(b) applies to fraudulent inducement claims brought in federal court, *Rogers v. Nacchio*, 241 F. App'x 602, 608-9 (11th Cir. 2007); *Regenicin, Inc. v. Lonza Walkersville, Inc.*, 997 F. Supp. 2d 1304, 1314-15 (N.D. Ga. 2014), "but scienter may be alleged generally."   *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1331 (N.D. Ga. 2014).

agent told Plaintiff that she could and told her what she needed to do to make that happen; WAMU or its agent knew that Plaintiff could not actually buy down her interest rate; WAMU or its agent intended Plaintiff rely on this; Plaintiff, relying on this representation, took these steps, and upon closing, the interest rate was above 5.5%.

"[A] party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." *Ekeledo v. Amporful*, 281 Ga. 817, 819 (2007) (quoting *Ainsworth v. Perreault*, 254 Ga. App. 470, 471, (2002)). Plaintiff's allegations show that she is only proceeding under the second option.

Unlike rescission under TILA, rescission under Georgia law requires that "the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value." O.C.G.A. § 13-4-60; *Brown v. Techdata Corp.*, 238 Ga. 622, 626 (1977). Plaintiff is adamant that she never tendered the proceeds of the Transactions to WAMU and never had to, and the letter she sent to WAMU on November 1, 2006, attempting to rescind the Transactions confirms that she did not tender or offer to tender the proceeds of the Transactions. Complaint at ¶¶ 16, 19-20, Exhibit 1. Therefore, Plaintiff did not rescind the Transactions under Georgia law. *Furtick v. Mortgage Elec. Registration Sys.*, 2011 Ga. Super. LEXIS 360, *20 (dismissing complaint for rescission where "Plaintiff has failed to either 'restore or make a bona fide effort to restore' the proceeds of the mortgage loan, as required by O.C.G.A. § 13-4-60").

The Complaint therefore fails to state a claim for the declaratory relief requested, and Count 16 must be dismissed as to all Defendants.

### b.  Counts Wholly Dependent Upon Rescission of the Transactions

Plaintiff has pled several state law claims for damages that depend solely on her assertion that she rescinded the Transactions in 2006.  These include Count 3 (tortious interference with property rights), Count 4 (intentional infliction of emotional distress), Count 8 (unjust enrichment/disgorgement), Count 9 (theft by extortion, theft by deception, theft by conversion, theft by taking), Count 10 (wrongful attempt to foreclose), Count 11 (malicious use and abuse of process),[82] Count 12 (slander of title), and Count 14 (quiet title).  As the Court has determined that Plaintiff did not rescind the Transactions, these claims necessarily fail and are dismissed as to all Defendants.

### c.  Count 1 – TILA Violations

Plaintiff has not pled any facts that would establish a *prima facie* case for any TILA violations.  Plaintiff alleges that Seterus, through JPMC, created a new loan to which Plaintiff is not a party.  Plaintiff further alleges the "creation of unidentified loans is a common practice of Seterus," effectively "rebranding . . . existing loans with new loan numbers when there have been no new contracts signed."[83]  Plaintiff likens loan numbers to vehicle identification numbers ("VIN") and argues that loans are required to have a unique identifying number that stays with the loan throughout its life.  Plaintiff takes this analogy one step further and argues that just as it is fraudulent to knowingly remove, obliterate, tamper, or alter a VIN, it is fraudulent to change a

---

[82] Under Georgia law, "[a] foreclosure under a power of sale contained in a security deed is not a judicial proceeding and involves neither the use nor abuse of process." *Palacious v. Lienhard*, 2015 U.S. Dist. LEXIS 180767, *46 (N.D. Ga. Dec. 30, 2015) (citing *Ingram v. JIK Realty Co.*, 199 Ga. App. 335, 338, (1991)).  Further, "submissions of documents and affidavits does not constitute 'process' or an abuse of process under Georgia law." *Gaye v. Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 122669, *11 (N.D. Ga. Jan. 7, 2016) (citing *Rothstein v. L.F. Still & Co.*, 351 S.E.2d 513, 514-15 (Ga. Ct. App. 1986)).  Therefore Plaintiff cannot base her claim for abuse of process on activity related to the nonjudicial foreclosures, or any letters Defendants sent her, or the proof of claim filed in the Bankruptcy Case.

[83] *Id.* at ¶ 70.  Plaintiff points to numerous complaints filed against Seterus and JPMC with the CFPB and alleges that her situation is identical to those.

16

loan number.  Plaintiff argues in both sur-reply briefs (Docs. 39, 40), that the official staff

interpretations related to Regulation Z require that the loan number never change.[84]

Plaintiff further argues that Paragraph 20 of the Security Deed only provides for the

change of the name and address of the new servicer and where to send payments, but does not

provide for the unilateral creation of a new loan or new loan number.  Plaintiff believes she never

had an "account" with JPMC or Seterus and takes offense to the use of that word to describe the

Loan.

There is nothing fraudulent or unlawful about a loan number or account number changing

when the loan servicer changes, and in fact this is a common practice.  *See, e.g.*, *Henriquez v.*

*Green Tree Servicing, LLC (In re Henriquez)*, 536 B.R. 341, 349 (Bankr. N.D. Ga. Aug. 31,

2015) (Sacca, J.) (pointing out that a new account number is assigned when a loan is service

transferred "but that does not create a new loan—it is the same Loan with a different account

number"); *Wheaton v. Wells Fargo Bank, N.A.,* 2012 U.S. Dist. LEXIS 190302, *9 (N.D. Ga.

Jan. 6, 2012) (finding that the assignment of a new account number to loan at service transfer

was not unlawful or fraudulent); *Jordan v. Equifax Info. Servs., LLC*, 410 F. Supp. 2d 1349, 1355

(N.D. Ga. 2006) ("[T]he assignment of the new account number was done for a legitimate

business purpose, not to interfere with Plaintiff's rights.").  Further, in Plaintiff's response to

JPMC's motion to dismiss, Plaintiff acknowledges that she received a letter from JPMC in 2015

stating that her account number would change when Seterus assumed servicing responsibilities.

Doc. 34 at ¶ 8.

---

[84] Plaintiff specifically points to 12 C.F.R. Appendix Supplement I Part 226, Official Staff Interpretations and the
requirement that "Section 1026.37(a)(12) [of Regulation Z] requires that the creditor disclose a loan identification
number that may be used by the creditor, consumer, and other parties to identify the transaction, labeled as 'Loan ID
#.'"  Available at:  https://www.consumerfinance.gov/eregulations/1026-37/2014-25503_20150801#1026-37-a-12.
This comment does not state that the loan number must remain the same throughout the life of the loan or that it
cannot change when there is a change in servicer.

All of the TILA violations Plaintiff alleges are subject to a one-year statute of limitations. *See* 11 U.S.C. § 1640(e).  The Transactions closed in 2006, more than eleven years ago, and the Loan was transferred last in 2015.  Any claims Plaintiff has regarding deficient disclosures at the time she consummated the Transactions or when they were transferred are time barred.

Plaintiff argues that all applicable statute of limitations have been tolled due to Defendants' collective concealment of the facts.  Plaintiff argues in the alternative that Defendants should be equitably estopped from relying on all applicable statute of limitations because Defendants' actions constitute a continuing violation into the present and because they failed to honor the affirmative duty of full and fair disclosure to Plaintiff.  All of these arguments fail.

First, Plaintiff knew of the alleged deficiencies in the disclosures provided in connection with the Transactions shortly after their closing.  Plaintiff cites these deficiencies in the letter she sent to WAMU as a reason she desired to rescind the Transactions.  Complaint at Exhibit 1. Second, TILA actions based on a lack of disclosure are not subject to the continuing violation doctrine in the Eleventh Circuit.  A "TILA nondisclosure 'violation 'occurs' when the transaction is consummated,' in other words, at the time of closing of a residential mortgage transaction. . . .  Insofar as nondisclosure is concerned, [the Eleventh Circuit Court of Appeals has] held that the violation 'is not a continuing violation for purposes of the statute of limitations.'"  *Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 838 (11th Cir. 2010) (quoting *Smith v. Am. Fin. Sys., Inc. (In re Smith)*, 737 F.2d 1549, 1552 (11th Cir. 1984)).  Plaintiff's argument that the Defendants should be estopped from relying on the statute of limitations because they continued to fail to perform the affirmative duty of full and fair disclosure is a repackaging of the argument that Defendants' conduct constitutes an ongoing violation.

Accordingly, the Complaint fails to state a claim under TILA and Count 1 must be dismissed as to all Defendants.

### d.  Count 2 - RESPA Violations

To state a *prima facie* claim for a RESPA violation, Plaintiff must allege that (1) the defendant is a loan servicer; (2) the defendant received a written request relating to servicing of a mortgage loan; (3) the defendant failed to respond adequately; and (4) plaintiff is entitled to actual or statutory damages. 12 U.S.C. § 2605(f); *Tonea v. Bank of Am, N.A.*, 6 F. Supp. 3d 1331, 1346 (N.D. Ga. 2013).   In order for a loan servicer to be obligated to respond, the QWR must request information "related to the servicing of the loan." *See, e.g.*, *Sheely v. Bank of Am., N.A.*, 36 F. Supp. 3d 1364, 1369 (N.D. Ga. 2014); *accord Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1348-49 (S.D. Fla. 2016).   Additionally, the QWR must have actually been received by the defendant.  *Hellhoff v. Caliber Home Loans*, 2014 U.S. Dist. LEXIS 189192, *16-17 (N.D. Ga. Oct. 21, 2014) (granting motion to dismiss where plaintiff failed to allege the address to which she sent the purported QWRs or that the servicer received them because, citing to 12 U.S.C. § 2605(e)(1)(A), only receipt of the QWR gives rise to the loan servicer's duty to respond).

As an initial matter, Count 2 must be dismissed as to Fannie Mae, B&S, and First American Title because the Complaint does not allege that these defendants were loan servicers.[85]  *See*, *e.g*., *Beacham v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 86106 at *6 (N.D. Tex. May 25, 2012) (finding that Fannie Mae is not a loan servicer and thus "under no obligation to respond to a QWR"); *Vitti-Carlesimo v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 104087, *11 (E.D. Mich. July 25, 2013) (dismissing a RESPA claim where Fannie Mae was owner of the

---

[85] Rather, the Complaint alleges that Fannie Mae owns the Loan and is not the servicer.  Complaint at ¶ 38; Proof of Claim 3-1.

loan, not a servicer); *Gibson v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 3608538, *5 (W.D. Tenn. Aug. 16, 2011).

Second, Count 2 must be dismissed as to JPMC because the Complaint neither alleges that Plaintiff sent QWRs to JPMC nor attaches any correspondence that appear to be QWRs sent by Plaintiff to JPMC.  Plaintiff, therefore, has failed to allege that JPMC received a QWR.[86]

Third, Count 2 fails, as currently pled, as to Seterus because the Complaint fails to allege that Plaintiff sent to Seterus QWRs about the servicing of the Loan and that Seterus' failure to respond to the QWRs caused damage to Plaintiff.  The Complaint states that Plaintiff sent QWRs to Seterus concerning the origination of the Loan.  The letters Plaintiff attached as Exhibit 17 to the Complaint confirm this.  Plaintiff also alleges that she sent two other letters dated December 16, 2015, and December 27, 2015, but these letters are not attached to the Complaint and were not provided in any of Plaintiff's responses to the Motions.  Most important, Plaintiff does not quote from either letter in the Complaint or her responses and does not allege any facts in the Complaint that would lead the Court to conclude that these letters might be QWRs.  *See Williams v. Ocwen Loan Servicing LLC*, 2015 U.S. Dist. LEXIS 180550, *50 (N.D. Ga. July 31, 2015) (RESPA claims dismissed where plaintiff failed to allege any facts to demonstrate that the letter would qualify as a QWR or to attach it to the complaint); *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1372-73 (N.D. Ga. 2012) (same); *Lawson v. Ocwen Loan Servicing LLC*, 2015 U.S. Dist. LEXIS 180579, *35-36 (N.D. Ga. Jan. 26, 2015) (granting motion to dismiss for

---

[86] Plaintiff states in her response to JPMC's motion to dismiss that JPMC is the master servicer and therefore, vicariously liable for Seterus' alleged conduct.  Factual assertions in briefs cannot save a complaint from dismissal for failing to contain those relevant allegations.  *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief.").  Even if the Court considered this argument, the statute and case law within this circuit clearly support the conclusion that a principal may not be held vicariously liable for a RESPA violation.  *See Bernstein v. Wells Fargo Bank, N.A.*, 2016 WL 4546653, at *4 n.3 (declining to follow *Rouleau* based on "the language of the statute and case law holding that only servicers can be held liable under Regulation X"); *see also Bennett v. Nationstar Mortg., LLC*, 2015 WL 5294321, at *10–11 (S.D. Ala. Sept. 8, 2015) (rejecting the holding of *Rouleau*); *cf. Rouleau v. U.S. Bank, N.A.*, 2015 WL 1757104 (D.N.H. Apr. 17, 2015).

failure to attach purported QWR where the plaintiff did not allege that the letters addressed servicing issues); *see also Habib v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 69858, 2011 WL 2580971, at *3 (N.D. Ga. Mar. 15, 2011) (dismissing RESPA claim because plaintiff did not "allege that the QWR was properly drafted according to the requirements of RESPA"). Therefore Count 2 of the Complaint, as pled, fails to state a *prima facie* case against Seterus for violations of RESPA.

The Court further finds that, even if the Complaint did properly allege the letters were QWRs, Count 2 would still fail to state a claim against Seterus. "Although plaintiff references QWRs in her complaint and alleges that defendants either failed to respond or did not completely respond . . . 'alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages.'" *Tisdale,* 2014 U.S. Dist. LEXIS 189203, at *29 (citation and internal marks omitted)); *see also Alleyne v. Bank of Am.*, 2012 U.S. Dist. LEXIS 198457, at *20-21 (N.D. Ga. June 1, 2012) (dismissing complaint that failed to "allege that Plaintiff is entitled to statutory damages as a result of [or] . . . allege facts showing that [plaintiff] was damaged by [defendants failure to respond to QWRs]") *adopted by* 2012 U.S. Dist. LEXIS 198452 (N.D. Ga., July 27, 2012).

Rather than dismiss Count 2 as to Seterus, the Court will allow Plaintiff twenty-one days to file an amendment to Count 2. Seterus is the only Defendant against whom Plaintiff may continue to proceed with her RESPA claim, and Count 2 is dismissed as to First American Title, B&S, JPMC, and Fannie Mae.

### e.  Count 6 - FDCPA Violations

The Complaint alleges that Defendants violated various provisions of the Fair Debt Collection Practices Act (15 U.S.C. §§ 1692 *et seq*.; "FDCPA"). As a threshold matter, a

defendant to an FDCPA action must be a "debt collector" as defined by Section 1692a(6) of the act. *Gardner v. TBO Capital LLC*, 986 F. Supp. 2d 1324, 1332 (N.D. Ga. 2013) (citing *Reese v. Ellis, Painter, Ratteree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012)). "A plaintiff's ability to properly classify a defendant as a debt collector is critical because the FDCPA applies only to 'debt collectors' whose conduct involves the collection a debt." *Agyeman v. McCurdy & Candler, LLC*, 2013 U.S. Dist. LEXIS 193354, *15 (N.D. Ga. July 16, 2013) (citations omitted).

With certain exceptions, a "debt collector" under the FDCPA is:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . For the purpose of [15 U.S.C. § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). "So a party can qualify as a 'debt collector' by either [(1)] using an 'instrumentality of interstate commerce or the mails' in operating a business that has the principal purpose of [(a)] collecting debts [or (b) enforcement of security interest, if Section 1692f(6) is implicated,] or [(2)] by 'regularly' attempting to collect debts." *Reese,* 678 F.3d at 1218.

First American Title is not a debt collector under the FDCPA.  The facts as pled show that its only role in the Transactions was to issue a title insurance policy, a copy of which it has provided to Plaintiff upon her request.  Plaintiff has alleged no other facts that would lead to a conclusion that First American Title is a debt collector, and therefore Count 6 must be dismissed as to First American Title.

Fannie Mae also is not a debt collector under the FDCPA, and therefore Count 6 must be dismissed as to it as well.  Fannie Mae owns the debt and is therefore a "creditor" under the

FDCPA.[87]    Creditors are typically not subject to the FDCPA since they are not "debt collectors."[88]    *See, e.g., Davidson v. Capital One Bank (USA),N.A.*, 797 F.3d 1309, 1313-14 (11th Cir. 2015); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000); *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1722-25 (2017).

JPMC and Seterus also cannot be a debt collector under the FDCPA.  Section 1692a(6) provides specific exceptions to who qualifies as a debt collector.  15 U.S.C. §§ 1692a(6)(A)-(F).  Section 1692a(6)(F)(iii) provides that the term debt collector "does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii); *Keyama-Joy El v. Ocwen Servicing, LLC*, 2016 WL 4257771, at *6 (N.D. Ga. Mar. 29, 2016); *Obeng-Amponsah v. Chase Home Fin., LLC*, 624 Fed. App'x 459 (9th Cir. 2015) (affirming dismissal of FDCPA claim against servicer who acquired servicing rights prior to default because servicer was not a debt collector); *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453 (6th Cir. 2013) (finding that servicer who acquired servicing rights prior to default is not a debt collector under the FDCPA).  The exception contained in Section 1692a(6)(F)(iii) is applicable to both JPMC and Seterus.

Fannie Mae acquired its interests in the Loan in 2006 or in 2008,[89] and at both of those times the Loan was not in default.  Plaintiff first defaulted on the Loan sometime in 2011, which is after JPMC became the servicer.  Plaintiff cured that default.  Seterus became the servicer in

---

[87] Excluded from the definition of "creditor" is "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).  Plaintiff does not argue that this exception applies and does not allege in the Complaint that Fannie Mae acquired the Loan for this purpose.

[88] Included in the definition of "debt collector" is "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).  Plaintiff does not allege in the Complaint that Fannie Mae has attempted to collect its own debt or has used any other name, so under the facts as alleged, Fannie Mae is not a creditor acting as a debt collector.

[89] *Id.* at ¶ 39, Exhibits 3 & 4.

2015, and at that time, the Loan was not in default.  Therefore, neither JPMC nor Seterus are

debt collectors under the FDCPA, and Count 6 must be dismissed as to both.  *Id.*

B&S is the only Defendant who could be a debt collector under the FDCPA.  B&S denies

that it is a debt collector and argues that Plaintiff has failed to plead such in the Complaint.

The Complaint alleges that B&S admitted that it was a debt collector in a letter to

Plaintiff dated August 5, 2016, that stated "[t]he above referenced loan has been placed with

[B&S] for foreclosure."[90]   "[A]n entity cannot transform itself into a debt collector within the

meaning of the FDCPA simply by noting in a letter that it may be considered one under [the

FDCPA] since statutory definitions control the meaning of a statute's terms."  *Tisdale*, 2014 U.S.

Dist. LEXIS 189203, at *31 n.22 (citations and internal marks omitted); *see also Fenello v. Bank

of Am., NA*, 577 F. App'x 899 (11th Cir. 2014) (unpublished).  The Complaint contains no

allegations that would tend to show (1) that B&S operates a business that has the principal

purpose of (a) collecting debts due to another or (b) enforcing security interests, or (2) that B&S

regularly attempts to collect debts due to another.[91]

Had Plaintiff pled facts that would tend to show that B&S is a "debt collector," the

Complaint, as further discussed below, states a claim on the merits for violations of Section

1692g of the FDCPA.  Therefore, in the interest of judicial economy, the Court will also consider

the merits of Plaintiff's allegations against B&S, and rather than dismiss Count 6 as to B&S, the

Court will allow Plaintiff twenty-one days to file an amendment to Count 6.

Plaintiff alleges that B&S' actions violated the FDCPA's prohibition against false or

misleading statements about their legal claims against Plaintiff, 15 U.S.C. § 1692e, and

---

[90] Complaint at ¶ 80.  The allegations regarding the August 5, 2016 letter along with Exhibit 19B attached to the
Complaint are sufficient to show that B&S was attempting to collect a debt.  *Reese*, 678 F.3d at 1217-18.
[91] In an attempt to overcome this deficiency, Plaintiff states in her Response to B&S' motion to dismiss that B&S'
website advertises that it is a debt collector.  "A plaintiff may not amend her complaint through argument in a
brief."  *Gilmour*, 382 F.3d at 1315.

constitute unfair and unconscionable means of collecting a debt, 15 U.S.C. § 1692f.[92]  While Plaintiff does not specifically cite to Section 1692g in the Complaint, Plaintiff alleges that Defendants violated the FDCPA when they failed to validate her loan and failed to cease collection efforts after receipt in writing of her dispute.  15 U.S.C. §§ 1692g(a)-(b).

Section 1692e(5) provides that a debt collector may not threaten "to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  Section 1692f provides that a debt collector may not threaten or take nonjudicial action to dispossess a debtor of property if there is no present right to possession.  Plaintiff argues that B&S' threatening to and initiating the nonjudicial foreclosure process violated both of these sections because there was no enforceable security interest.

As discussed above, Plaintiff did not rescind the Transactions and Fannie Mae holds a valid security interest in the Property.  While it is possible for a debt collector to violate the FDCPA even when proceeding with a valid security interest, *see Reese* 678 F.3d at 1216, Plaintiff's basis for the alleged violation is solely that there was not a valid security interest in the Property.  Plaintiff does not assert or plead facts in the Complaint that Defendants' actions violated any other subsections of either Section 1692e or Section 1692f.  Plaintiff has thus not pled a *prima facie* case that Defendants violated Sections 1692e or 1692f.

Plaintiff alleges that she responded to B&S' foreclosure notices fully disputing the amount and validity of the claim.  The exhibits attached to the Complaint show that Plaintiff timely requested B&S validate her debt when she received B&S' various foreclosure notices.[93] Plaintiff further alleges that she sent her responses via both fax and certified mail and that she

---

[92] Plaintiff has only pled facts related to violations of Sections 1692e(5) and 1692f(6)(A).

[93] Complaint at Exhibit 19B, Exhibit 17.  Based on B&S's response to Plaintiff's request to validate that Plaintiff was eleven (11) days late with that request, the Court recognizes that the evidence might show that Plaintiff did not timely make her requests to validate after she received the letter dated August 5, 2016.  The facts as alleged, however, are that Plaintiff did timely make her request to validate in response to that letter.

has confirmation that B&S received both and did not stop the foreclosure proceedings or provide validation of the debt. Therefore, Plaintiff has pled a *prima facie* case that B&S violated Sections 1692g(a)-(b) if it is a "debt collector."

Rather than dismiss Count 6 as to B&S, the Court will allow Plaintiff twenty-one days to file an amendment to Count 6. B&S is the only Defendant against whom Plaintiff may continue to proceed with her FDCPA claim and Plaintiff may only proceed against B&S for violations of Sections 1692g(a)-(b) of the FDCPA.

### f. Count 7 – Georgia Fair Business Practices Act

Plaintiff argues that Defendants' actions that violate the FDCPA are also intentional violations of Georgia's Fair Business Practices Act of 1975 (the "FBPA"). O.C.G.A. § 10-1-390 *et seq.* A violation of the FDCPA is necessarily also a violation of the FBPA. *See 1st Nationwide Collection Agency, Inc. v. Werner*, 288 Ga. App. 457 (2007); *Gilmore v. Account Mgmt.*, 357 F. App'x 218, 221 (11th Cir. 2009). As discussed above, the Complaint potentially states a claim for FDCPA violations against B&S, and Plaintiff has twenty-one days to amend that count. The Court therefore will not dismiss Count 7 as to B&S.

The only other possible violation of the FBPA that Plaintiff alleges is WAMU's fraudulently inducing her to enter into the Transactions in 2006.[94] However, the FBPA does not apply to residential mortgage transactions. *James v. Bank of Am., N.A.*, 332 Ga. App. 365, 369 (Ga. Ct. App. 2015); Stewart v. SunTrust Mortg., Inc., 331 Ga. App. 635, 639-40 (Ga. Ct. App. 2015); *Jenkins v. BAC Home Loans Servicing, LP*, 822 F.Supp.2d 1369, 1376 (M.D. Ga. 2011). Count 7 of the Complaint, therefore, must be dismissed as to JPMC, First American Title, Fannie Mae, and Seterus.

---

[94] All of the other activity that Plaintiff alleges Defendants engaged in as the predicate acts are based on the same factual allegations that Plaintiff attempted to use to support her claims that she rescinded the Transactions. As discussed above, Plaintiff cannot support these allegations.

### g.  **Count 5 – Georgia RICO Violations**

Debtor asserts that Defendants have committed at least eight different acts[95] constituting

a scheme of criminal activity and evidencing a pattern of racketeering activity in violation of the

Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act.[96]  However, the only

potentially actionable act of those eight is the alleged violation of the "Georgia Residential

Mortgage Fraud Act," O.C.G.A. §§ 16-8-100 *et seq*., by WAMU which Plaintiff ascribes to

Fannie Mae as successor in interest.[97]

For there to be a violation of the Georgia RICO Act, a defendant must engage in or

conspire to engage in "a pattern of racketeering activity."  O.C.G.A. § 16-14-4.  The code defines

"pattern of racketeering activity" to mean "[e]ngaging in at least two acts of racketeering activity

. . . or in any one or more acts of domestic terrorism as described in subjection (a) of Code

Section 16-4-10."  O.C.G.A. § 16-14-3(4).[98]  Plaintiff has successfully alleged only one "act of

racketeering activity," WAMU fraudulently inducing her to enter into the Transactions in 2006,

and has not plead any facts related to an "act of domestic terrorism."  Therefore, the Complaint

---

[95] Complaint at ¶ 152.

[96] O.C.G.A. §§ 16-14-1 *et seq*.  Section 16-14-6 of the Georgia RICO Act provides civil remedies for violations and that individuals my "institute a civil action under . . . this Code section."  O.C.G.A. § 16-14-6(b).

[97] Georgia's RICO statute was amended in 2015.  Under both the pre-amendment and post-amendment version of the statute, mortgage fraud violations are considered "racketeering activities."  *See* 2015 Ga. ALS 98, 2015 Ga. Laws 98, 2015 Ga. Act 98, 2015 Ga. HB 233.

All of the other activity that Plaintiff alleges Defendants engaged in as the predicate acts are based on the same factual allegations that Plaintiff attempted to use to support her claims that she rescinded the Transactions.  As discussed above, Plaintiff cannot support these allegations.

[98] OCGA § 16-4-10(a) provides that

As used in this Code section, "domestic terrorism" means any violation of, or attempt to violate, the laws of this state or of the United States which:
(1) Is intended or reasonably likely to injure or kill not less than ten individuals as part of a single unlawful act or a series of unlawful acts which are interrelated by distinguishing characteristics; and
(2)(A) Is intended to intimidate the civilian population of this state, any of its political subdivisions, or of the United States;
(B) Is intended to alter, change, or coerce the policy of the government of this state or any of its political subdivisions by intimidation or coercion; or
(C) Is intended to affect the conduct of the government of this state or any of its political subdivisions by use of destructive devices, assassination, or kidnapping.

fails to state a *prima facie* claim for RICO violations, and Count 5 must be dismissed as to each Defendant.

### h.   Count 13 – Fraudulent Concealment

Plaintiff's fraudulent concealment claim rests primarily upon WAMU's failure to rescind and the allegedly fraudulent creation of Loan #5273.  As discussed above, Plaintiff did not rescind the Transactions under TILA or Georgia law.  Additionally, loan numbers can and do change when loan servicers or ownership changes.  *See, e.g.*, *Henriquez v. Green Tree Servicing, LLC (In re Henriquez)*, 536 B.R. 341, 349 (Bankr. N.D. Ga. Aug. 31, 2015) (Sacca, J.) (pointing out that a new account number is assigned when a loan is service transferred, "but that does not create a new loan—it is the same Loan with a different account number"); *Wheaton v. Wells Fargo Bank, N.A.,* 2012 U.S. Dist. LEXIS 190302, *9 (N.D. Ga. Jan. 6, 2012) (finding that the assignment of a new account number to loan at service transfer was not unlawful or fraudulent); *Jordan v. Equifax Info. Servs., LLC*, 410 F. Supp. 2d 1349, 1355 (N.D. Ga. 2006) ("[T]he assignment of the new account number was done for a legitimate business purpose, not to interfere with Plaintiff's rights.").

Plaintiff also alleges that JPMC represented that it owned the loan, when in fact JPMC was merely the servicer.  As JPMC was the servicer, it was entitled to receive payments from Plaintiff.  Although JPMC's entitlement to payment ceased when Seterus became the servicer, the Complaint states that JPMC refused payment at that time.  No harm came to Plaintiff because of her mistaken belief that JPMC owned the loan.  The Complaint, therefore, fails to state a claim for fraudulent concealment, and Count 13 is dismissed as to all Defendants.

### i. __Count 15 – True and Accurate Accounting__

"Under Georgia law, a party may seek an equitable accounting in "[c]ases where accounts are complicated and intricate." *Phillips v. Ocwen Loan Servicing, LLC*, 2013 U.S. Dist. LEXIS 129721, *18-21, 2013 WL 4854760 (N.D. Ga. Sept. 10, 2013) (quoting O.C.G.A. § 23-2-70). Contracts "commonly used by homeowners," such as mortgage loan agreements, are not the type of "complicated and intricate" accounts that require an equitable accounting. *Id.* at *22. Additionally, Seterus has provided Plaintiff a payment history attached to the proof of claim it filed on behalf of Fannie Mae in the Bankruptcy Case. The Complaint therefore fails to state a claim for an equitable accounting, and Count 15 of the Complaint is dismissed as to each Defendant.

### j. __Count 17 – False Claims Act and Qui Tam Action__

Plaintiff alleges that Seterus sent her two letters denying separate loan modification requests that she did not actually make. Plaintiff further alleges that, as servicer for Fannie Mae, Seterus is paid for processing a loan modification even if it is ultimately denied. These allegations appear to attempt to state a claim under the Federal False Claims Act,[99] but the Complaint fails to satisfy the strict requirements for a private citizen filing a qui tam action. *See* 31 U.S.C. § 3730.

### k. __Count 18 – GAFLA Claims__

To the extent the Complaint alleges violations of GAFLA, those claims are preempted by federal law as explained above. Even if Plaintiff's GAFLA claims are not preempted, the Complaint fails to state a claim against any Defendant for a violation of GAFLA, as the Complaint fails to identify a single provision of GAFLA that Defendants violated and only mentions the act in passing twice. The Complaint therefore fails to state a claim for violation of

---

[99] 31 U.S.C. §§ 3729 *et seq.*

GAFLA and must be dismissed as to each Defendant, as it fails to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

**IV. <u>Conclusion</u>**

For the reasons stated above, it is hereby

**ORDERED** that Counts 1, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16 17, and 18 are dismissed as to all Defendants;

**IT IS FURTHER ORDERED** that Count 2 of the complaint is dismissed as to First American Title, Fannie Mae, JPMC, and B&S.  Seterus is the only Defendant against whom Plaintiff may continue to proceed with her RESPA claim.  Plaintiff has twenty-one days to file an amendment to Count 2.  Failure to file an amendment to Count 2 will result in dismissal of Count 2 against Seterus;

**IT IS FURTHER ORDERED** that Counts 6 and 7 of the complaint are dismissed as to First American Title, Fannie Mae, JPMC, and Seterus.  B&S is the only Defendant against whom Plaintiff may continue to proceed with her FDCPA claim and Plaintiff may only proceed against B&S for violations of Sections 1692g(a)-(b) of the FDCPA.  Plaintiff has twenty-one days to file an amendment to Count 6.  Failure to file an amendment to Count 6 will result in dismissal of Counts 6 and 7 against B&S;

**IT IS FURTHER ORDERED** that Plaintiff has twenty-one days to file an amended complaint that complies with the requirements for private citizens filing a claim under the False Claims Act.

**END OF DOCUMENT**

## DISTRIBUTION LIST

Leslie D. Hughes
2270 Charleston Place
Lithia Springs, GA 30122

Brian Frederick Hansen
Kutak Rock LLP
Suite 2750, 303 Peachtree Street, N.E.
Atlanta, GA 30308

Robert J. Solomon
Solomon Baggett, LLC
3763 Rogers Bridge Road
Duluth, GA 30097

Mallory Velten
Brock & Scott, PLLC
4360 Chamblee Dunwoody Road, Suite 310
Atlanta, GA 30341

Thomas M. Barton
COLES BARTON LLP
150 South Perry Street, Suite 100
Lawrenceville, GA 30046

Shaun M. Daugherty
Coles Barton LLP
Suite 2900, 191 Peachtree Street, NE
Atlanta, GA 30303-1775

Aaron P.M. Tady
Coles Barton LLP
Suite 100 , 150 South Perry Street
Lawrenceville, GA 30046

Melissa J. Davey
Melissa J. Davey, Standing Ch 13 Trustee
Suite 200, 260 Peachtree Street, NW
Atlanta, GA 30303

Joy D. Nesmith
Baxter & Nesmith, LLC
Suite 320, Buckeye Tower
3300 Buckeye Road
Atlanta, GA 30341